UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LEONA MULLINS, INDIVIDUALLY AND ON BEHALF OF DAVON MULLINS, | CASE NO.: 1:12CV384 |
| Plaintiffs, | Judge Michael R. Barrett |
| v. | |
| OSCAR CYRANEK, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Leona Mullins' Motion to Strike Errata Sheet of Oscar Cyranek.  (Doc. 33).  Defendant Oscar Cyranek has filed a response in opposition (Doc. 36; Doc. 37), and Plaintiff as filed a reply (Doc. 40).  This matter is now ripe for review.

**I.     BACKGROUND**

Defendant Oscar Cyranek moved for summary judgment on the claims against him. (Doc. 28).  In support of that motion, Cyranek attached an errata sheet dated May 7, 2013, which made thirty-nine corrections to his April 24, 2013 deposition testimony.  (Doc. 28-1).   Plaintiff takes issue with 13 of those changes in the errata sheet.  (Doc. 33).  The relevant deposition testimony, as well as the corresponding changes to that testimony set forth in the errata sheet, are as follow:

| No. | Deposition | Including Errata Sheet Changes |
|---|---|---|
| 1. | "So I was on the other side, I was kind of like peeking around to see if I see anything." (Doc. 27-1, p. 155).[1] | "So I was on the other side, I was kind of like peeking around to see if I see anything **suspicious**." (Doc. 28, p. 230). |
| 2. | "I was hoping pretty much that he just doesn't continue walking away from us because obviously he saw me." (Doc. 27-1, | "I was hoping **that he would continue walking away from fountain square and all those people.**" (Doc. 28-1, p. 230). |

---

[1] Unless otherwise noted, all page number citations for documents filed with the Court refer to the PageID # provided by CM/ECF.

1

| | | |
|---|---|---|
| | p. 156). | |
| 3. | "Q  Do you remember what he said back to you?<br>A  No.  There's not much I can remember from the conversation we had.  Usually, like I said, what I do is, I ask if they have anything illegal on them.  Then I'm going to pat him down for weapon."<br><br>(Doc. 27-1, p. 157-58). | "Q  Do you remember what he said back to you?<br>A  No.  There's not much I can remember from the conversation we had.  Usually, like I said, what I do is, I ask if they have anything illegal on them.  Then **I tell them I am going to pat them down for a weapon.**" (Doc. 28-1, p. 230). |
| 4. | "Yeah, he wasn't under arrest.  Usually, I tell people to relax, I mean, there is no need for it, I didn't see any need for him to resist, there is not . . . ."  (Doc. 27-1, p. 159-60). | "Yeah, he wasn't under arrest.  Usually, I tell people to relax, I mean, there **was** no need for it, I didn't see any need for him to resist, there **was** not." (Doc. 28-1, p. 230). |
| 5. | "Q  When you fired your two shots you didn't see where the gun was?<br><br>A No."<br><br>(Doc. 27-1, p.168). | "Q  When you fired your two shots you didn't see where the gun was?<br><br>A No. **I didn't see the gun pointed at me. He had it in his hand when I lost control of his arm.  He was moving toward me when I fired two shots at him.**"<br><br>(Doc. 28-1, p. 230). |
| 6. | "Q  I mean, you just shot a guy. I mean, they weren't coming after you, were they?<br><br>A Not at the time.  I mean, it was all in – I think was in panic too."<br><br>(Doc. 27-1, p. 169-70). | "Q  I mean, you just shot a guy. I mean, they weren't coming after you, were they?<br><br>A **The guy that was with Davon, I think he was in a panic.  No, he didn't come at me he just didn't know what to do**."<br><br>(Doc. 28-1, p. 230). |
| 7. | "Q  You didn't render first aid?<br><br>A  I was still in panic."<br><br>(Doc. 27-1, p. 171). | "Q  You didn't render first aid?<br><br>A  I was still in **shock**. **I knew there were other officers coming**."<br><br>(Doc. 28-1, p. 230). |
| 8. | "Q . . . Now, isn't it true that no one walked over to try to pick that gun up.?<br><br>A  I couldn't say that."<br><br>(Doc. 27-1, p. 170). | "Q . . . Now, isn't it true that no one walked over to try to pick that gun up.?<br><br>A  I **cannot** say that **because I picked up the gun right away – no one was able to get close to the gun**." |

2

|  |  | (Doc. 28-1, PageID 230). |
|---|---|---|
| 9. | "Q  All right.  You changed the scene?<br><br>A  Yes, I did."<br><br>(Doc. 27-1, p. 170). | "Q  All right.  You changed the scene?<br><br>A  **I didn't understand the question.  It is true that where the gun ended up was part of the scene, but I just want to clarify that the only weapon I fired was my department issued service weapon**."<br><br>(Doc. 28-1, p. 230). |
| 10. | "Q  When you lost control of the arm, why didn't you tase him?<br><br>A  Well, because he has a weapon on him.  That was a deadly force situation at the time."<br><br>(Doc. 27-1, p. 179). | "Q  When you lost control of the arm, why didn't you tase him?<br><br>A  Well, because he has a weapon **in his hand with his finger on the tiffer [sic] and was moving toward me with the gun**.  That was a deadly force situation at the time."<br><br>(Doc. 28-1, p. 230). |
| 11. | "I wouldn't say panic, it was  -- I was in this state – it's hard to explain what I was going through.  But like I was saying, it's like a tunnel vision, I had this kind of like unrealistic – I don't know.  It was just, it was like unreal, like you don't want to believe what's going on at the time, the time slows down ---"   (Doc. 27-1, p. 183). | I wouldn't say panic, **I meant shock** -- I was in this state – it's hard to explain what I was going through.  But like I was saying, it's like a tunnel vision, I had this kind of like unrealistic – I don't know.  It was just, it was like unreal, like you don't want to believe what's going on at the time, the time slows down ---"   (Doc. 28-1, p. 230) |
| 12. | "Q  In fact, you acknowledged you don't even know if he was in the group, correct?<br><br>A  That's correct, but I mean, can we take a chance, I mean – might as well could be him.  I don't know, but I know they – Obviously wasn't a hundred percent."<br><br>(Doc. 27-1, p. 189). | "Q  In fact, you acknowledged you don't even know if he was in the group, correct?<br><br>A  That's correct, but I mean, can we take a chance**?** I mean, **it could be him.  I don't know, but I obviously wasn't a hundred percent sure**."<br><br>(Doc. 28-1, p. 231). |
| 13. | "I mean, we have some gangs, neighborhood gangs, I would say, in the City of Cincinnati.  I didn't know Davon if he was in a gang, I don't know.  I mean, there could be some shoot-out between two | "I mean, we have some gangs, neighborhood gangs, I would say, in the City of Cincinnati.  I didn't know Davon if he was in a gang, I don't know.  I mean, there could be some shoot-out between two |

3

| | |
|---|---|
| guys or bunch of them, there's going to be a lot of people that are going to get shot right there at the Square.  My main concern was to try that nothing like this happens on Fountain Square.  There was just too many people."  (Doc. 27-1, p. 189). | guys or bunch of them, there's going to be a lot of people that are going to get shot right there at the Square.  My main concern was to **make sure people are safe and** that nothing like this happens on Fountain Square.  There was just too many people."  (Doc. 28-1, p. 231). |

## II.  ANALYSIS

Plaintiff moves to strike the errata sheet under Fed. R. Civ. P. 12(f) or to disregard the changes as impermissible under Rule 30(e).

Under Federal Rule of Civil Procedure 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  It may do so on its own or a motion made by a party before responding to the pleading.  Fed. R. Civ. P. 12(f).  Here, the errata sheet is not a "pleading" and therefore Rule 12(f) is inapplicable.

The Court, however, may consider the motion as an invitation to disregard the changes to the errata sheet in ruling on summary judgment.  Federal Rule of Civil Procedure 30(e) outlines the process by which a deponent may alter his or her deposition testimony:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1).  The Sixth Circuit has interpreted Rule 30(e) to prohibit "'one to alter what was said under oath.'"  *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 565 (6th Cir. 2009) (quoting *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2008 U.S. Dist. LEXIS 12307 (S.D. Ohio Feb. 7, 2008)).  *Accord: A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 702-03 (6th Cir. 2013) ("[A] party moving for summary judgment cannot

4

extinguish a genuine issue of material fact simply by filing an errata sheet and affidavit to counteract the effect of previous deposition testimony."). If it were the case that what was said under oath could be altered in an errata sheet, "one could merely answer the questions with no thought at all[,] then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Trout*, 339 F. App'x at 565 (quoting *Tuttle*, 2008 U.S. Dist. LEXIS 12307). This is a restrictive approach to Rule 30(e), and district courts inside and outside the Sixth Circuit have recognized that "the Sixth Circuit is apparently the '[o]ne court of appeals [that] permits a deponent to correct only typographic and transcription errors.'" *Walker v. 9912 East Grand River Assocs., LP*, No. 11-12085, 2012 U.S. Dist. LEXIS 46887, at *8 (E.D. Mich. Apr. 3, 2012) (quoting *Devon Energy Corp. v. Westacott*, No. H-09-1689, 2011 U.S. Dist. LEXIS 30786 (S.D. Tex. Mar. 24, 2011)). Those courts applying *Trout* thus have disregarded errata sheets when they attempt to make more significant alternations, even for the purpose of clarifying. *Clare v. Chrysler Group, LLC*, No. 13-11225, 2014 U.S. Dist. LEXIS 75873, at *7 (E.D. Mich. June 4, 2014) (striking changes to errata sheet under *Trout* and less restrictive approach); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-374, 2014 U.S. Dist. LEXIS 59689, at *12 (E.D. Ky. Apr. 30, 2014) (striking changes to errata sheet under *Trout* because they substantively changed answers provided at the deposition); *Giebel v. Lavalley*, No. 5:12-cv-750, 2013 U.S. Dist. LEXIS 181887, at *13 (N.D. Ohio Dec. 31, 2013) (striking errata sheet changes provided for "clarification" "[i]nformation recalled after [the] deposition," "[to] correct [a] misstatement," and "[to] correct grammar" as improper); *CNB Bancshares, Inc. v. StoneCastle Secs., LLC*, No. 3:09-cv-33, 2012 U.S. Dist. LEXIS 97541 (E.D. Tenn. July 13, 2012) (rejecting changes to errata sheet that contradicted deposition testimony).

Here, most of the above-quoted portions of the errata sheet should be disregarded for failure to comply with Rule 30(e)'s requirement that Officer Cyranek provide the reasons for making each of the changes.  Although counsel now provides an additional explanation for the changes, Rule 30(e) requires that the deponent sign a statement providing the reasons for the changes.  Officer Cyranek has not done so for most of the alterations.[2]

Even assuming the Rule 30(e) requirements have been satisfied, all but one of the above portions of the errata sheet should be disregarded under *Trout*.  The only change that may be considered a typographical or transcription error is the change from "is" to "was" in the fourth alteration identified above.  The rest of those alterations add and change details that were not provided in the original deposition testimony, or change the meaning of the testimony provided.  Such alterations are impermissible.  As such, all of changes in the errata sheet, except the fourth alteration identified above, are not properly considered in ruling on the motion for summary judgment.

### III.    CONCLUSION

For the foregoing reasons, the Motion to Strike (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART**.  In ruling on Defendant's motion for summary judgment, the Court will not disregard the fourth alteration but will disregard all other portions of the errata sheet identified above pursuant to Rule 30(e).

**IT IS SO ORDERED.**

                                                           s/Michael R. Barrett
                                                           Michael R. Barrett, Judge
                                                           United States District Court

---

[2] The reason for the fourth alteration is clear, however, as it changes the present tense of the word to the past tense of the word.